NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240294-U

NO. 4-24-0294

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 2, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| KATHERINE SMITH, | ) | No. 18CF204 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Rudolph M. Braud Jr., |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Doherty and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court reversed and remanded, holding the trial court abused its discretion by finding the State had proven by clear and convincing evidence that defendant posed a real and present threat to the safety of the community that could not be mitigated through any combination of conditions of pretrial release.

¶ 2        Defendant, Katherine Smith, appeals the trial court's order denying her pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), hereinafter as amended by Public Acts 101-652 and 102-1104 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). Defendant argues the court erred by finding she posed an unmitigable threat to the safety of the community. We reverse and remand.

¶ 3                              I. BACKGROUND

¶ 4        In 2018, defendant was charged with first degree murder (720 ILCS 5/9-1(a)(3) (West 2018)), armed robbery (*id.* § 18-2(a)(1)), home invasion (*id.* § 19-6(a)(1)), and theft (*id.* § 16-1(a)(1)). The trial court set bond in the amount of $2 million.

¶ 5        On November 3, 2023, defendant filed a motion for a hearing to reopen the conditions of pretrial release pursuant to section 110-7.5(b) of the Code (725 ILCS 5/110-7.5(b) (West 2022)), which had been recently amended pursuant to the Act. She alleged she remained in custody due to her inability to satisfy her monetary bond.

¶ 6        On February 8, 2024, the State filed a petition to deny defendant pretrial release pursuant to section 110-6.1 of the Code (*id.* § 110-6.1). The petition alleged defendant had been charged with a forcible felony and that her pretrial release posed a real and present threat to the safety of any person or persons or the community. As a factual basis, the State alleged that defendant acted with Dayne Woods and Mark Mezaros to set up a robbery of the victim. The State alleged defendant gave Woods and Mezaros instructions on how to enter the victim's home. Woods and Mezaros subsequently entered the home without defendant, and they deployed pepper spray to subdue the occupants. The victim "struggled" with Woods, and Woods stabbed him in the chest, which ultimately caused his death. Woods and Mezaros left the victim's residence with money, which they shared with defendant.

¶ 7        A pretrial investigation report was prepared, which indicated defendant, who was 18 years old at the time of the incident, had no criminal history. The report stated that, prior to defendant's incarceration, she had been living with her mother, working as a sales associate, and attending classes at a community college. Defendant reported that, before her arrest, she drank alcohol socially and used cannabis every day. She scored a 4 on the Revised Virginia Pretrial Risk Assessment Instrument (VPRAI-R), which placed her at a "low-moderate risk level."

Defendant's mother reported defendant had been a normal teenager and had been involved with her church. Defendant's mother stated she believed defendant was in her current situation due to being in an abusive relationship.

¶ 8        At a hearing on the State's petition, the State proffered that while the evidence would likely not show that defendant entered the victim's home on the night of the incident, it would show she was just as culpable as the other two defendants by way of legal accountability. The State asserted defendant led Woods and Mezaros to the victim's home, where they planned to steal money and marijuana. Woods and Mezaros entered the house and pepper-sprayed the occupants. The victim attempted to defend himself, and Woods stabbed him in the chest, causing his death. The State asserted that, but for defendant's involvement, the victim would not have been murdered. The State argued defendant's release posed a threat to the community because she showed a disregard for the victim's life when she "sent [Woods and Mezaros] to his home." The State argued: "Even if [defendant] did not anticipate the death, she anticipated something bad was going to happen to [the victim], knowing Mr. Woods and what he was capable of and on a mission to accomplish, which at the outset was the robbery of [the victim]."

¶ 9        Defense counsel argued that, to detain defendant, it was not enough to show she had been charged with a detainable offense or might pose a danger to the community. Rather, the State had to prove no combination of conditions could mitigate the threat she posed to the community. Counsel argued there were conditions that could mitigate any such threat. Counsel noted defendant was not alleged to have personally performed any act of violence but rather had been charged on an accountability theory for each charged offense. Counsel asserted defendant "got hooked up" with Woods because they both liked to smoke marijuana. Counsel indicated Woods "liked to dress up like a cop with all his gear and go in and rip off dope dealers." Counsel

stated there was evidence that defendant and Woods planned to "rip off" the victim, who was a marijuana dealer, but there was no evidence showing she contemplated Woods would physically harm the victim. Counsel noted defendant had been in jail awaiting trial for six years because she had indicated that she would assist in Woods's prosecution and his case had not yet been tried.

¶ 10       A copy of the VPRAI instruction manual was admitted into evidence. Defense counsel argued that, pursuant to the manual, it was recommended that defendant be released with conditions, including court date reminders, criminal history checks before every court date, weekly face-to-face contact, and special conditions as needed. Counsel recommended as special conditions that defendant be ordered to not leave Illinois, not use or possess any controlled substance, undergo drug testing, maintain employment and school attendance, have no contact with her codefendants or any other individuals the trial court deemed appropriate, not go to the property of the victim's family, be placed on home confinement, have a curfew, and be subject to electronic monitoring.

¶ 11       The State argued the VPRAI-R was meant only to help guide the trial court and was not to replace the court's judgment. The State reasserted its position that detention was the least restrictive means of protecting the community.

¶ 12       The trial court found the State had met its burden of proving its petition by clear and convincing evidence and ordered defendant to be detained. The court stated the nature of the charged offenses "sp[oke] volumes" about dangerousness and defendant's potential threat to the community. The court found defendant had been charged with a detainable offense and that her conduct "poses a danger to the community at large" based on the State's proffer and the factual basis in the petition. The court stated detention was the "least restrictive at this point."

¶ 13 The trial court entered a written detention order utilizing a form order. The written order indicated the court had found by clear and convincing evidence that the proof was evident or presumption great that defendant had committed a detainable offense, defendant's pretrial release posed a real and present threat to the safety of the community, and no condition or combination of conditions of release could mitigate the threat. It further indicated the court's reasons for concluding defendant should be denied pretrial release were based on the nature and circumstances of the charged offenses.

¶ 14 Defendant filed a timely notice of appeal utilizing the notice of appeal form in the Article VI Forms Appendix to the Illinois Supreme Court Rules. See Ill. S. Ct. R. 606(d) (eff. Dec. 7, 2023). Defendant also filed a supporting memorandum.

¶ 15                                    II. ANALYSIS

¶ 16 On appeal, defendant argues the trial court erred by finding the State proved by clear and convincing evidence that she posed a threat to the safety of the community that could not be mitigated by conditions of pretrial release. Defendant argues the evidence at the detention hearing showed she lacked a criminal history and her only involvement in the charged offenses was providing information about the victim's residence to Woods, who had a history of robbing drug dealers. Defendant also notes she had a "low-moderate" score on the VPRAI-R, which she argues suggests she is suitable for pretrial release. Defendant contends the court erred by determining that the "strong conditions" of pretrial release proposed by the defense were insufficient to mitigate any safety threat that she posed.

¶ 17 Section 110-6.1(e) of the Code (725 ILCS 5/110-6.1(e) (West 2022)) provides that all criminal defendants are presumed eligible for pretrial release. However, a defendant may be denied release if, upon verified petition, the State proves by clear and convincing evidence at

a detention hearing that (1) the proof is evident or the presumption great the defendant committed a detainable offense, (2) the defendant poses a real or present threat to the safety of any person or persons or the community, and (3) no condition or combination of the conditions can mitigate this threat. *Id.* "Courts have defined 'clear and convincing' evidence most often as the quantum of proof that leaves no reasonable doubt in the mind of the fact finder as to the truth of the proposition in question." *Bazydlo v. Volant*, 164 Ill. 2d 207, 213 (1995). "Although stated in terms of reasonable doubt, courts consider clear and convincing evidence to be more than a preponderance while not quite approaching the degree of proof necessary to convict a person of a criminal offense." *Id.*

¶ 18    We review a trial court's ruling denying a defendant pretrial release for an abuse of discretion. *People v. Inman*, 2023 IL App (4th) 230864, ¶¶ 10-11; see *People v. Minssen*, 2024 IL App (4th) 231198, ¶ 17 ("On appeal following a detention hearing, we apply the abuse-of-discretion standard of review to the trial court's evaluation of the evidence presented."). "An abuse of discretion occurs when the *** court's decision is arbitrary, fanciful or unreasonable or where no reasonable person would agree with the position adopted by the *** court." (Internal quotation marks omitted.) *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9.

¶ 19    Here, defendant does not challenge the trial court's finding that the proof was evident or the presumption great that she committed a detainable offense. Rather, she argues the State's assertion in the trial court that there would not have been a murder but for her involvement did not establish she was dangerous, and she does not "present[ ] a threat to safety going forward." Further, she argues that, even if the State's proffer established that she posed a real and present threat to the safety of the community, the conditions of release suggested by defense counsel were sufficient to mitigate the threat.

- 6 -

¶ 20 We agree and find the trial court abused its discretion by determining, based solely on the nature and circumstances of the charged offenses, that defendant "poses a danger to the community" and that no condition or combination of conditions of pretrial release could mitigate such threat. While the charged offenses in this case are extremely serious, defendant was nevertheless presumed eligible for pretrial release under the Code, and it was the State's burden to prove that detention was warranted. 725 ILCS 5/110-6.1(e) (West 2022).

¶ 21 Section 110-6.1(g) of the Code (*id.* § 110-6.1(g)) provides that the trial court is to consider a nonexhaustive list of factors in determining whether the defendant poses a real or present threat to the safety of the community, including (1) the nature and circumstances of the charged offense, including whether the offense involves violence or the use of a weapon or is a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person whose safety the defendant is believed to pose a threat; (4) any statements made by or attributed to the defendant; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to weapons; (8) whether, at the time of the charged offense or any other offense or arrest, the defendant was on probation parole, aftercare release, mandatory supervised release, or any other release from custody pending, trial, sentencing, appeal, or completion of a sentence; and (9) any other factor deemed by the court to reasonably bear on the defendant's propensity or violent, abusive, or assaultive behavior.

¶ 22 Here, the only factor the trial court pointed to in support of its determination that defendant posed a real and present threat to the safety of the community was the one relating to the nature and circumstances of the offense. However, based on the State's proffer, the nature and circumstances of the offense alone were not sufficient to support a finding that defendant

posed a real and present threat to the safety of the community in this case. According to the State, defendant, Woods, and Mezaros planned to rob the victim of money and marijuana. Defendant gave Woods and Mezaros information as to how to enter the victim's residence, but she did not enter the residence with them. When Woods and Mezaros were in the victim's residence attempting to rob him, Woods stabbed the victim in the chest during a struggle, ultimately causing his death.

¶ 23    While the State's proffer tended to show defendant was legally accountable for the charged offenses (see 720 ILCS 5/5-2 (West 2018)), it was not sufficient, on its own, to show that defendant posed real and present threat to the safety of the community. The State's proffer did not indicate that defendant masterminded the robbery, was aware that Woods would be armed with a knife during the incident, was aware violence would be used against the victim, or personally performed or witnessed any act of violence. The State pointed to no other factor indicating that defendant posed a threat to the safety of the community. Significantly, the pretrial services report indicated that defendant had no prior criminal history, and the State presented no evidence she had a history of violence.

¶ 24    Even if we were to find that the State had established defendant posed a real and present threat to the safety of the community, the State failed to prove that no condition or combination of conditions of pretrial release could mitigate such a threat. "[T]he fact that a person is charged with a detainable offense is not enough to order detention, nor is it enough that the defendant poses a threat to public safety." *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18. Rather, "the trial court must determine, based on the specific facts of the case and the defendant's individual background and characteristics, whether any combination of conditions can mitigate the threat and allow the defendant's release." *Id.* Proof of the basic elements of the

charged offense may be part of the proof that no conditions could mitigate the threat posed by defendant, but more is required. *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18. "If the base allegations that make up the *sine qua non* of a violent offense were sufficient on their own to establish this element, then the legislature would have simply deemed those accused of violent offenses ineligible for release." *Id.*

¶ 25　　　　In the instant case, the State's proffer presented little more than evidence of the basic elements of the charged offenses, and the evidence it presented concerning the nature and circumstances of the offenses was insufficient to establish by clear and convincing evidence that no combination of conditions could mitigate any threat defendant posed to the safety of the community. As we have discussed, the State's proffer tended to show defendant was legally accountable for the charged offenses (see 720 ILCS 5/5-2 (West 2018)) in that she assisted her codefendants in planning a robbery by providing information as to how to enter victim's residence. However, the State's proffer did not establish that defendant personally performed any violent act in connection with the charged offenses or even contemplated that violence would be used against the victim. While we do not foreclose the possibility that the facts surrounding a detainable offense beyond its mere elements may be enough to establish an unmitigable threat to the safety of the community in some cases, this is not such a case.

¶ 26　　　　Moreover, the other evidence presented at the detention hearing weighed against the trial court's finding that no condition or combination of conditions could mitigate any threat posed by defendant. The pretrial services report showed that defendant, who was 18 years old at the time of the incident, had no prior criminal history, though she admitted to occasional underage drinking and regular use of marijuana. She scored a 4 on the VPRAI-R, which, according to the manual admitted into evidence at the detention hearing, suggested that release

with conditions was appropriate. There was no evidence that defendant had a history of violating court orders or would otherwise be unlikely to comply with the conditions of pretrial release.

¶ 27 Regarding defendant's association with Woods and Mezaros and any threat her association with them might pose to the safety of the community, defense counsel suggested several conditions of release that could mitigate this threat—including, *inter alia*, having no contact with her codefendants, refraining from the use of drugs (which was allegedly how she came to know Woods), and possible home confinement. The trial court did not expressly consider whether any of these conditions could mitigate the threat posed by defendant, and, notably, never made a finding as to why less restrictive conditions than detention would not avoid a real and present threat to the safety of the community, as required under section 110-6.1(h)(1) of the Code (725 ILCS 5/110-6.1(h)(1) (West 2022)).

¶ 28 We conclude that, based on the evidence presented at the detention hearing, the trial court erred in finding that defendant posed a threat to the safety of the community and that no conditions of release could mitigate the threat. Accordingly, we find the court abused its discretion in granting the State's petition to deny defendant pretrial release.

¶ 29 III. CONCLUSION

¶ 30 For the reasons stated, we reverse the trial court's judgment and remand the matter for further proceedings, including consideration of defendant's motion to reopen the conditions of pretrial release pursuant to section 110-7.5(b) of the Code (725 ILCS 5/110-7.5(b) (West 2022)).

¶ 31 Reversed and remanded.