NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250143-U

NO. 4-25-0143

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 14, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Rock Island County |
| DAQUAN D. DICKERSON, | ) | No. 24CF975 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Peter W. Church, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Grischow and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Defendant fleeing from police at a high rate of speed with his two-year-old child in the vehicle qualified as a felony involving the threat of great bodily harm, thus making the offense detainable.

¶ 2     Defendant Daquan D. Dickerson appeals from the circuit court's order granting the State's petition to deny him pretrial release under section 110-6.1(e) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1(e) (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023). On appeal, defendant argues the charged offense was not a detainable offense under section 110-6.1(a)(1.5) of the Code (*id.* § 110-6.1(a)(1.5)).

¶ 3     For the reasons set forth below, we affirm.

¶ 4                         I. BACKGROUND

¶ 5     On December 4, 2024, defendant was charged by information with two counts of aggravated fleeing or attempting to elude a peace officer (625 ILCS 5/11-204.1(a)(1), (4) (West

2022)), a Class 4 felony, and one count of endangering the life or health of a child (720 ILCS 5/12C-5(a)(1) (West 2022)), a Class A misdemeanor. The alleged events took place on November 29, 2024, in Rock Island County. According to count 1, "after having been given visual and audible signal[s] to stop" (red and blue oscillating lights and siren) by a Rock Island County Sheriff's Office deputy, defendant "failed to stop" his vehicle "and in doing so traveled at a rate of speed in excess of 21 miles per hour over the legal speed limit." Count 2 alleged that defendant, also having been given visual and audible signals to stop, disregarded two stop signs and a stoplight. Count 3 alleged that defendant knowingly endangered the life or health of a minor child in that he "fled from police at a high rate of speed" with the child in the vehicle.

¶ 6        On December 10, 2024, the State filed its petition to deny pretrial release. The petition was filed jointly with two other cases (Rock Island County case Nos. 24-CF-708 and 24-CF-737), which also involved defendant allegedly fleeing at high speed from police following an attempted traffic stop. The other cases related to events in September 2024. In case No. 24-CF-708, defendant allegedly reached speeds of 80 miles per hour in a 45 miles per hour speed zone and in case No. 24-CF-737, he purportedly reached speeds of 52 miles per hour in a 30 miles per hour zone. Neither case, however, involved a detainable offense.

¶ 7        Regarding the charges at issue here, the petition alleged that on November 29, 2024, defendant had been involved in an alleged domestic battery with A.R., with whom he had a child. According to the proffer, defendant grabbed A.R., but she managed to get away; defendant, however, "left in a vehicle with their 2-year-old child still inside." Deputies then located defendant driving the vehicle and, after activating their patrol car lights and siren, attempted to pull him over. Defendant reportedly fled and disregarded two stop signs and then disobeyed a stoplight. "During the pursuit, the defendant [was] traveling at 92 mph in a 55 mph zone." At some point during the

chase, defendant had called A.R. and asked her to come get the child. Defendant eventually stopped and gave the child to A.R., who was driving in a separate vehicle. After handing over the child, defendant jumped back in the car and fled again. Because the child was considered safe, the deputies did not give further chase.

¶ 8 At the detention hearing, the State asked the circuit court to take notice of the contents of its petition to deny pretrial release and argued:

"Defendant was trying to flee from a domestic battery incident and that the Defendant left with a two-year-old vehicle [*sic*] still inside and is fleeing in that situation, and we have speeds of 92 miles per hour in a 55 miles per hour zone. Then we have the child being handed over, which that was the only thing rendered that child safe given this situation."

¶ 9 The State further pointed out that in one of the prior incidents, defendant was "fleeing from police and *** went into the opposite lane in an attempt to elude the officer." The Stated proffered that defendant "went through a red light" and "almost collided with another vehicle" and the police discontinued their pursuit out of safety concerns.

¶ 10 In response, defendant argued that he had not been charged with a detainable offense and that "he did not intend to cause harm to anyone." He further argued that the State had not "shown that this particular incident or these particular instances involve[d] the threat of or infliction of great bodily harm or permanent disability or disfigurement." Defendant asserted, "No one was hurt during these incidences. There were no accidents that occurred."

¶ 11 The circuit court granted the petition and ordered defendant detained. The court found that aggravated fleeing and eluding a peace officer, although a Class 4 felony, was "not in and of itself a detainable offense." However, the charged offense did constitute "any other felony

which involves the threat of or infliction of great bodily harm or permanent disability or disfigurement." Accordingly, the court found that "a specific unique set of facts" existed, specifically, the aggravated fleeing and eluding in the first two counts and "then during the course of the commission of the alleged offense there was a child present in the vehicle."

¶ 12    On January 2, 2025, defendant filed his Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024) motion for relief, again arguing that he had not been charged with a detainable offense.. On February 11, 2025, the circuit court denied defendant's motion for relief, stating:

"[I]t was clear from the record that was made at the time of this detention hearing that the Court made specific findings that it felt under that *** catchall exception, if you will, where there's the threat or actual infliction of great bodily harm or injury.

The Court notes that in this particular instance it focused on *** not only the nature of the offense itself, but the fact that the mindset involved in fleeing and eluding while a two-year-old child is in the vehicle itself is what the Court found indicated to the Court, one, that there was that threat of great bodily harm.

There was clearly no infliction of great bodily harm, but the Court does find that there was the threat, and the Court also finds that the mindset which would be involved in engaging in that type of conduct in the Court's view does present a danger to the community."

¶ 13    The circuit court explained, "There are very few lines that one can cross that are more [clear cut than] when someone is driving in that fashion, disobeying two separate traffic control devices, speeding 92 miles an hour in a 55 mile an hour zone while the two-year-old is in the vehicle itself." Because the court found that defendant's actions created a threat of infliction

of great bodily harm, it constituted a detainable offense under section 110-6.1(a)(1.5). The court therefore denied defendant's motion for relief.

¶ 14 A timely notice of appeal was filed two days later. This appeal followed.

¶ 15 II. ANALYSIS

¶ 16 The sole issue on appeal is whether the charged offense is a detainable offense under section 110-6.1(a)(1.5) of the Code. Both parties concede that the charged offense of aggravated fleeing and eluding, while a felony, is not a "forceable felony," and so it is not a detainable offense *per se*. The dispute, therefore, is whether the charged offense constitutes "any other felony which involves the threat of or infliction of great bodily harm or permanent disability or disfigurement" under section 110-6.1(a)(1.5)'s residual clause. 725 ILCS 5/110-6.1(a)(1.5) (West 2022).

¶ 17 A. Standard of Review

¶ 18 Under the standards set forth in *People v. Morgan*, 2025 IL 130626, ¶ 53, when the parties to a pretrial detention hearing proceed solely by proffer, as here, a reviewing court is not bound by the circuit court's factual findings and may conduct its own independent *de novo* review of the proffers and documentary evidence. Moreover, to the extent our decision requires us to construe the language of section 110-6.1(a)(1.5), our review is again *de novo*. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 41.

¶ 19 B. Construing Section 110-6.1(a)(1.5)

¶ 20 The Code presumes that all criminal defendants are eligible for pretrial release prior to conviction. 725 ILCS 5/110-6.1(e) (West 2022). In order to establish that a defendant should be detained prior to a conviction, the State must prove by clear and convincing evidence that (1) the defendant has committed a qualifying offense; (2) the defendant poses a "real and present threat

to the safety of any person or persons or the community, based on the specific articulable facts of the case"; and (3) that "no condition or combination of conditions *** may mitigate *** the real and present threat *** to the safety of any person or persons or the community, based on the specific articulable facts of the case." *Id.* § 110-6.1(e)(1)-(3). For this appeal, our inquiry focuses on the first element, *i.e.*, whether the State has proven that defendant committed a qualifying offense.

¶ 21        Section 110-6.1(a)(1.5) of the Code defines forcible felony for purposes of detainable offenses and specifically lists numerous felonies that are considered forcible felonies. *Id.* § 110-6.1(a)(1.5); *People v. Delaney*, 2024 IL App (5th) 240231, ¶ 17. It further contains a residual clause that includes any felony "which involves the threat of or infliction of great bodily harm or permanent disability or disfigurement." 725 ILCS 5/110-6.1(a)(1.5) (West 2022). Section 110-6.1(a)(1.5) does "not include an intent element, a limitation that the threat be against a specific individual, or that defendant contemplated the threat of great bodily harm." *Delaney*, 2024 IL App (5th) 240231, ¶ 19. We note that the assessment of whether the defendant's conduct "posed such a threat must be evaluated in light of the actual circumstances of the alleged conduct, not simply whether that conduct could have posed a threat in some other circumstances." *People v. Serrato-Zavala*, 2024 IL App (2d) 240255, ¶ 22 (citing *People v. Minssen*, 2024 IL App (4th) 231198, ¶ 22).

¶ 22        We find the decision in *People v. Rodriguez*, 2023 IL App (3d) 230450, instructive to our analysis of the issue. In *Rodriguez*, the defendant was charged with resisting or obstructing a peace officer, causing injury (720 ILCS 5/31-1(a-7) (West 2022)). *Rodriguez*, 2023 IL App (3d) 230450, ¶ 3. In determining whether the charged offense was detainable under section 110-6.1(a), the court acknowledged that while resisting or obstructing a peace officer is not listed as a forcible

felony in the statute, the charges fell under section 110-6.1(a)(1.5)'s residual clause, which includes, " 'any other felony which involves the threat of or infliction of great bodily harm or permanent disability or disfigurement.' " *Id*., ¶ 10 (quoting 725 ILCS 5/110-6.1(e) (West 2022)). According to the court, the "defendant was charged with a felony" and "drove away during a traffic stop while the officer's body was partially inside the vehicle." *Id.* The court concluded that the facts showed defendant's actions "involved the threat of great bodily harm" and that he "contemplated the use of the force and was willing to use it." *Id.*

¶ 23　　　　Similarly, we likewise find persuasive *People v. Salazar*, 2024 IL App (3d) 240066-U, where the appellate court, relying on *Rodriguez*, affirmed the circuit court's decision to deny the pretrial release of a defendant charged with aggravated fleeing and eluding a peace officer in a school zone (625 ILCS 5/11-605(e-5) (West 2022)). The court in that case explained:

> "[D]efendant was charged with the felony offense of aggravated fleeing and eluding. The proffered facts surrounding this charged offense show that defendant fled from the officers at a very high rate of speed, disobeying three traffic control devices, on one occasion weaving around cars stopped at an intersection. Considering the nature and extent of this reckless driving as he fled the officers, the circuit court did not err in concluding that the manner in which defendant committed aggravated fleeing and eluding involved the threat of great bodily harm to other persons on the roadway." *Salazar*, 2024 IL App (3d) 240066-U, ¶ 16.

¶ 24　　　　The defendant's actions in *Salazar* were found sufficient to establish that the charged felony involved the threat of great bodily harm or permanent disability or disfigurement. *Id.*; see *Delaney*, 2024 IL App (5th) 240231, ¶¶ 25-27.

¶ 25　　　　Here, defendant was fleeing police at a high rate of speed, traveling 92 miles per

hour in a 55 miles per hour zone. He disobeyed three separate traffic control devices with his two-year-old child in the vehicle. This clearly presented a significant threat of "great bodily harm or permanent disability of disfigurement" to the child. Accordingly, we find that the charged offense, although not specifically listed in section 110-6.1(a)(1.5), nevertheless falls under the subsection's residual clause. It is, therefore, a detainable offense.

¶ 26    Defendant urges this court to follow the recent decision in *Serrato-Zavala*, 2014 IL App (2d) 240255, ¶ 20, where the appellate court held that that the aggravated DUI charges in that case did not constitute a detainable offense. There, the defendant had been driving his vehicle at night and in the rain without headlights. *Id.* ¶ 4. The court found it significant that "the police synopsis stated only that the defendant was observed driving at about 11:30 p.m., without headlights." *Id.* ¶ 22. Moreover, the report "did not describe any dangerous driving such as swerving, drifting, red-light running, or erratic speed. Nor was there any indication of how the roadway was lit or whether other traffic or pedestrians were present." *Id.* We distinguish that case factually and decline to apply it here because, unlike the facts in *Serrato-Zevala*, the potential impact of the defendant's conduct here is clear from the proffered facts. Unlike in *Serrato-Zevala*, defendant's conduct here put the safety of a specific person—his child—in potential danger.

¶ 27    Defendant further argues that this court's recent decision in *Minssen* requires reversal. There, the charges related to an alleged attempt by the defendant, who stood five feet, one inch tall and weighed 100 pounds, to bite a police officer. *Minssen*, 2024 IL App (4th) 231198, ¶ 3. The court found the charges did not involve a felony presenting the " 'threat of or infliction of great bodily harm or permanent disability or disfigurement,' " and so it was not a detainable offense. *Id.* ¶ 5 (quoting 725 ILCS 5/110-6.1(a)(1.5) (West 2022)). In that case, however, the court found there were insufficient facts argued by the State that showing the defendant's actions rose

to the level of threat contemplated by the General Assembly. *Id.* ¶ 24. Here, the proffer established that there were multiple instances of dangerous behavior, including a near accident, reckless driving with a child in the car, and driving well above the speed limit while ignoring traffic devices. As with *Serrato-Zavala*, we find *Minssen* factually distinguishable and decline to apply it.

¶ 28 Based on the specific facts of this case, we find the charges of aggravated fleeing or attempting to elude a peace officer constituted a detainable offense under the residual clause of section 110-6.1(a)(1.5) of the Code.

¶ 29 III. CONCLUSION

¶ 30 For the reasons stated, we affirm the circuit court's judgment.

¶ 31 Affirmed.